Okay. We'll move to our fourth case of the morning. It's in Appeal No. 22-2694, Todd Duncan. Nice to see you. You may proceed. Hold on one second. Sure. Yes. Mr. Dilley is remote. Mr. Dilley, can you hear and see us okay? Yes, Judge Stoddard, I can. Okay. Very well. Mr. Duncan. Thank you. I'm going to be brief and I probably won't even use the entire ten minutes allotted. This is a very factual, intensive case. We have three for SSI and for disability insurance benefits. Out of the chute, the state agency retained a doctor, Dr. Oros, to review the entire medical record. Dr. Oros reviewed the period from the child's birth up until the date that he found that he met a listing, which was 2015. So he's awarded SSI as of 2015. The state agency denied based upon Dr. Oros' opinion. We go to a hearing. The ALJ finds that Dr. Oros' opinion was supported by the medical record and clearly established that he was disabled as of June 9th of 2009. Therefore, he awards disability insurance benefits but denies the child claim. The problem that is that the ALJ, in making that first finding, felt that Dr. Oros' opinion was sufficiently clear enough that he could discern that the individual or Mr. Hess would be off task ten percent of the day or more and would be absent more than ten percent of the day. Then the matter was appealed. It was remanded back and the second time the judge denied, now finding Dr. Oros' opinion to be vague. Well, the problem comes in again that we have him finding it sufficient in one place but insufficient in another and it's primarily because of, admittedly, the lack of medical evidence between about 2004 and 2009. Now, the problem comes in that regulations and social security rulings direct that the ALJ should take into account why there is a failure to follow prescribed treatment under 16-4P, the social security rule. And there's testimony, unrebutted, that they could not afford treatment, any mental health treatment during that period of time. And Dr. Oros' opinion specifically outlines a 2004 evaluation and he uses that to go through and come up with the restrictions as they're all outlined. And that doesn't change. There's nothing that deviates from that. And that's ultimately where the case sets. It's whether or not, indeed, as ALJ Schaefer said, there's insufficient evidence or that, in this particular case, Dr. Oros' opinion as of or prior to June 9th of 2018 is too vague for him to apply anything of any substance to award child benefits. Now, it wasn't too vague before. It was vague in the second go-around. I find it a little The court has ruled repeatedly on the Section 1 findings, especially when it comes to concentration, persistence, and pace and the fact that they can apply those. And if you look at those, it clearly lays out sufficiently that there's at least limitations of concentration and attention, which is where ALJ came up with being off task 10% of the time. So that's it. That's the entire case. It's whether or not there's substantial evidence to support the judge's ruling on that particular point. But you don't take issue with the ALJ deciding that contrary to Dr. Oros' conclusions, Mr. Hess was disabled at a later date. Correct. So you like some of what the ALJ did with Dr. Oros' findings and testimony, just not others. Correct. And let me say that I appreciate Judge Schaefer looking at this critically and at least awarding the disability insurance benefits because of the application or relevancy of now being eligible for Medicare as opposed to Medicaid and the difference that is available in treatment. So, I mean, in actuality, I should be thanking Judge Schaefer for being so gracious as to find an earlier date. But when we consider that a child benefit, you get the PIA, personal income allotment, of the adult parent as opposed to what his earnings were before the age of 30. It makes a significant difference in the amount of money that's paid out as a strongest case I've ever brought before this court. I felt it was worth pursuing. Sometimes I guess, as I tell my staff, chasing windmills is sometimes valid. Can I, Mr. Duncan, I want to make sure that I may have underappreciated the brief. Can you restate the 16-4P argument? Just restate it. It's 3P. It's SSR 16-3P. The ALJ has a duty to discern why there's a gap or a failure to follow prescribed treatment. And they list a whole category of considerations, religious views on treatment, the ability to afford treatment, having insurance available, the fact that there are side effects to the treatment. I mean, they list them all out. And the judge has to make a finding to that effect. And in this particular case, the testimony was from both the mother and Mr. Hess that they were financially unable to pay for psychological treatment. This is also during the period of time where Wisconsin did not cover mental health treatment if you were on what our version is, badger care. So you had to pay out of pocket. And it was considered a pre-existing condition. So even if you had insurance, you would not normally be denied coverage during that period of time. Okay. Is the point you're making then that under 16-3P, that the inability to afford mental health care, is that what explains the gaps in mental health care that the ALJ underscored in the analysis? Correct. They're not gaps because he just said, I'm not going. They're gaps because he couldn't afford it? Correct. And there's nothing in there that indicates that he had an improvement. And that's what Dr. Oros' opinion is. He looks at the stuff from 2004 and then looks at it again after 2009 and finds that they're very similar in orientation and decides that this must apply for the entire period. If he didn't, he would have made two separate findings. Before this date, this is the RFC. After this date, this is the RFC. Because that's ultimately what he did when he discussed the meeting of the listing and awarding benefits in 2015. So unless there's any questions, I'll reserve the last couple minutes in case. Okay. Very well. Thank you. Okay. Mr. Adili, nice to see you as well, and you may proceed. Thank you, Your Honor. Good morning, Your Honors. May it please the court, Chavit Adili on behalf of the Acting Commissioner. In this case, the ALJ, in a thorough 30-page decision, considered the record evidence about the now-remote closed period that remained at issue in this case, and reasonably concluded that Hess had not carried his burden to prove disability during that time. Opposing counsel correctly, I think, states that at this point, what remains is one of the three original claims that were at issue in this case, the child's disability benefits. And it's important for the court to keep that in mind, because as we stated in one of the footnotes in our brief, in order to be found to have been disabled and to get childhood disability benefits, what Hess had to prove was disability that began on or before his 22nd birthday, which I believe was August 7, 1999, and continued unabated until his application for benefits in 2016. And the ALJ reasonably considered the evidence during this closed period between 1999 and 2009, when he had previously found Hess to be disabled for or to have become disabled for the purposes of DIP benefits, and concluded that Hess had failed to provide evidence that he was disabled during that period, certainly that he was continuously disabled. And I think one of the core issues here, as reflected in Mr. Duncan's argument and your questions, Judge Sketter, is this issue about the gaps in treatment. And the ALJ took pains in the decision to explain that he did not read the gaps in the decision as adverse, that he did not want to indicate that he drew a negative inference about the condition during that period, but that it was simply a failure of evidence. The ALJ noted that each of these three-year gaps in a 10-year relevant period, so six years unaccounted for in terms of his mental condition during this 10-year period that the ALJ was considering, were punctuated at one end by reports to his doctors of relatively good functioning or significant improvement. So, for example, in 1997, just before the first three-year gap, and this is while Hess was 21 years old, just before he turned 22, he saw Dr. Moffitt, his psychiatrist, and told Dr. Moffitt that he had experienced significant improvement, that his attention deficit issues that he had previously claimed were not limiting him that much, that he was still experiencing obsessive-compulsive symptoms, but that they were not limiting his activities or his life that much. And Dr. Moffitt indeed issued a letter saying that he no longer believed Hess at that time qualified for the diagnosis of major depression, that he was then at that time at worst dysthymic. And then the record goes radio silent for three years about Hess's mental condition. And it was reasonable for the ALJ to consider that when evaluating a claim about childhood disability that required a continuous unabated period of disability. So, too, with the gap between, in treatment between 2004 and 2007, I believe that the last time Hess saw Dr. Moffitt was in 2004. In 2007, he saw a new psychiatrist, Dr. Stafford, and the record reflected that in that first appointment, he said that his obsessive-compulsive symptoms were not that bad at that point and expressed that his symptoms were less severe certainly than he now alleges they were for the entire period at issue. Opposing counsel and Hess in his brief focuses primarily on the ALJ's evaluation of Dr. Oroz's opinion, but as we argued in our brief, what's really telling about Dr. Oroz's opinion is that Dr. Oroz on page 183 of the record expressed himself the view that Hess did not become disabled until 2015. And he said that in part specifically citing the 1997 treatment notes that suggested improvement in his condition. So, Dr. Oroz, too, thought that for the purposes of childhood disability benefits, it was telling that there was an indication of improvement just before Hess's 22nd birthday when he had to establish a continuous period of disability began and then a three-year gap in treatment. One issue that I would like to address is this issue of SSR 16-3P. If you look at the what he thinks of the gaps in treatment, and the ALJ certainly did that here. The ALJ did not, again, specifically took pains to say that he was not drawing a negative inference from the fact of the gaps in treatment, but that it was something that he had to consider as a failure of evidence. And that's very reasonable in light of the fact that Hess at all times bore the burden to prove his disability. Here in the first ALJ hearing, he was represented by his mother, who, while a non-attorney representative for the purposes of the agency, is an attorney. And then on remand, he was represented by counsel on the second go-round with the ALJ. So, there's no concern that... I'm sorry to interrupt you. Go ahead. No, of course. No, no, please. Okay. Go ahead. I heard Mr. Duncan to be saying, no, no, it's not so much that the ALJ did not address the gap. It's that the ALJ did not address his client's testimony that the reason for the gap was financial distress and inability financially to obtain mental health treatment. I think that it may appear draconian, Your Honor, but I'm not sure that that matters. Because what we have here is a situation where that can't cause the ALJ to then bear the burden to disprove his disability, right, his allegation of disability. He bore the burden, and the ALJ has only the record that's before him. This is now a very remote period, right? All of these evidence that exists for this period has been introduced. And what the ALJ has in front of him is a treatment note or a treatment note and a letter from Dr. Moffitt, for example, in 1997 that says he's doing pretty well. I think that, in fact, the letter says something almost directly like that. This is like generally doing pretty well. And then the record goes radio silent. And so the fact that, if in fact it is the case, the fact that it was an inability to seek treatment, unfortunately, cannot require the ALJ to draw an inference in his favor. It's certainly something the ALJ could consider, but in this case, really, it doesn't change the fact that he has failed, in the ALJ's reasonable view, to prove a continuous unabated period of disability up to his 2016 application, which is what was required for him to receive child disability benefits. Ultimately, in this case, although the ALJ thought both Dr. Orozco's opinions and Dr. Pape's later reconsideration stage opinion were somewhat vague, the ALJ made clear his intent to substantially capture the limitations opined in those opinions. He included significant concentration limitations to simple work, very significant social limitations to no contact with the public, at most, occasional brief and superficial contact with co-workers, and then limitations that this court has, in other cases, ratified as capturing limitations to low-stress work. The ALJ substantially, very reasonably, in the 30-page decision, looked at the record evidence from the disputed period that was present. It's a 30-page decision, and the ALJ spends many pages discussing that evidence, both the evidence that weighs in favor of his claimant against, and came to the reasonable conclusion that it did not support the level of limitation or disability that he alleged during that period. For the reasons that, unless the court members have additional questions, for the reasons that we expressed in our brief and here at oral argument, we ask that the court affirm the ALJ's decision. Mr. Dilley, thank you. Mr. Duncan? Thank you. The government's position, the government's position about Dr. Onrose is that he did not find disability until 2015. That was because of the listing. He does not necessarily have the basis to do that if it's in a residual functional capacity of less than the listing, because that would have to go to a vocational expert in-house to make that decision of whether these limitations precluded work. And in this particular case, the ALJ reviewed that opinion and found that opinion sufficient to go back to 2009. So it's not like this is an opinion that had no weight and that the RFC that Dr. Onrose gave was insignificant. It was significant. Now, the problem we come to this is thinking of it this way. We have a period before 2005. We have a period after 2009. If A equals 6 here and A equals 6 here, there's a reasonable assumption that can be made that, especially when there's something such as inability to afford treatment, that the condition continued to be A equals 6 throughout the entire period of time, which is what the two medical opinions in this case, Dr. Onrose and Dr. Kesselhorn or Kesselhon, said. And it's that basis that the judge made the award in 2009 and then said, well, before that, I don't find their opinions to be significant enough. They're too vague. Well, they can't be vague at one point and then not vague at another point unless there's some sort of substantial change. Judge Peterson said there was a change in the grid date or something, some phrase he used. And I'm like, not that I'm aware of. And that's renewed. Thanks to you. The court will take the appeal under advisement.